**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**v.**

**JERRY MILLER,**

**Defendant.**
______________________________________________/

# COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## I. SUMMARY

1. On or about February 26, 2014, Defendant Jerry Miller made and directed the dissemination of materially false and misleading statements in a press release issued publicly on www.otcmarkets.com by Petrotech Oil and Gas, Inc. ("Petrotech").

2. Following Colorado's legalization of the sale of recreational marijuana in January 2014, Petrotech, at the direction and behest of Miller and his entities, LP.US Inc. and LP.US Management Group, both subsidiaries of Petrotech, issued a press release announcing that it had expanded its cannabis and hemp production and distribution channels in Washington and Colorado by securing a "Medical and Recreational license" from the state of Colorado and signing on six licensed growers, as well as three additional growers in Washington.

3. However, Colorado has never issued any license to cultivate or sell marijuana in the medical or retail markets to any of those entities. Furthermore, Petrotech, both LP US

entities, and all of their associated individuals have never held commercial or occupational licenses in the Colorado Medical or Retail Marijuana industries.

4. Miller knew, or was reckless in not knowing, that the February 26, 2014 press release contained materially false and misleading statements related to Petrotech's purported marijuana business.

5. By engaging in this conduct, Miller violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b); and alternatively, violated Section 10(b) and Rule 10b-5(b) through or by means of any other person, pursuant to Section 20(b) of the Exchange Act, 15 U.S.C. § 78t(b). Unless enjoined, Miller is reasonably likely to continue to violate the federal securities laws.

6. The Commission therefore respectfully requests the Court enter an order: (i) permanently restraining and enjoining Miller from violating the federal securities laws; (ii) directing Miller disgorge all ill-gotten gains; (iii) directing Miller to pay civil money penalties; (iv) imposing an officer and director bar against Miller; and (v) imposing a penny stock bar against Miller.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(d)(3)(A), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), and 78aa.

8. Venue in the Southern District of Florida is proper pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Miller resides and transacts business in this District. Additionally, a substantial portion of the conduct alleged herein occurred in the Southern District of Florida.

9. In connection with the conduct alleged in this Complaint, Miller, directly and indirectly, singly or in concert with others has made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and the mails.

## III. DEFENDANT

10. Miller, age 64, is the owner, President, and sole employee of a consulting firm specializing in microcap stock issuers, investor relations, and capital raising. Miller and his consulting company provided consulting services to Petrotech and its prior iterations beginning in approximately 2009. Miller is the father-in-law of the Secretary and Director of Petrotech during the relevant time. He resides in Bay Harbor Islands, Florida.

## IV. OTHER RELEVANT ENTITY

11. Petrotech was a Nevada corporation headquartered in Bedford, Texas until mid-2014, when the company ceased operations. Its common stock was quoted on the OTC Link operated by OTC Markets Group Inc. (symbol "PTOG") until March 14, 2014, when the Commission issued an order temporarily suspending trading in its securities. At all relevant times, Petrotech common stock qualified as "penny stock" under Section 3(a)(51) of the Exchange Act, 15 U.S.C. § 78c(a)(51), and Rule 3a51-1 thereunder, 17 C.F.R. § 240.3a51-1.

## V. FACTUAL BACKGROUND

### A. Petrotech's Formation

12. Petrotech was formed in Nevada in 1998 under a different name, as a purported natural resource company engaged in the acquisition of mineral properties. Between 2000 and 2013, the company underwent a reverse merger and several name changes, acquired two

subsidiaries, and was purportedly involved in various industries, including the development of compact disc and digital video marketing and profiling tools, and wine and spirits production.

13. Since approximately 2009, Miller and his consulting company, from its location in Bay Harbor Islands, Florida, provided consulting services to Petrotech's immediate predecessor, which was purportedly in the financial consulting business. Miller was a controlling shareholder of the predecessor company between 2010 and 2013, before the merger that created Petrotech.

14. In or around 2012, Miller introduced the predecessor company to an oil and gas company, and Miller and his consulting company assisted the predecessor company and the oil and gas company complete a reverse merger. The resulting company was named Petrotech, and Miller through his consulting company owned a significant number of shares in Petrotech after the merger. Miller and the consulting firm sold Petrotech stock at a profit during the time of the issuance of the press releases described herein.

15. Miller's son-in-law was the predecessor company's chairman, sole Director, and Secretary and remained in those roles after the merger with Petrotech.

16. In one of Petrotech's last public disclosures prior to the press releases, its Annual Report ending December 31, 2013, Petrotech stated that its financial condition was such that it "raised substantial doubt about the Company's ability to continue as a going concern."

**B. <u>Miller Sets the Stage for Petrotech's Foray into the Marijuana Business</u>**

17. In January 2014, Colorado's legalization of the sale of recreational marijuana became effective.

18. In early 2014, Miller incorporated LP.US, Inc. in Florida and LP.US Management Group, Inc. in Colorado and Washington (collectively, "LP US"). LP US, as a Petrotech subsidiary, would become Petrotech's vehicle to enter the burgeoning marijuana-related business.

Miller provided and controlled the financing of LP US and was responsible for its business decisions.

19. On or about February 19, 2014, in a press release Miller assisted in drafting, Petrotech announced for the first time that it had set up LP US, a subsidiary company in Colorado and Washington, "to serve as the foundation for the company's entrance into the emerging market for medical and recently legalized recreational marijuana in the United States." LP US would purportedly "specialize in managing the growers of legalized Marijuana and Hemp in the states where they are allowed to grow."

20. On or about February 20, 2014, Petrotech issued another press release announcing that LP US was "structured around three main divisions [which would] work cohesively to produce and market medicinal and recreational marijuana."

21. Throughout February 2014 and March 2014, Petrotech continued to issue press releases portraying it as having lucrative relationships with established marijuana growers.

22. During this time frame, Miller personally decided when to draft a press release, what statements it would include, and when it would be publicly disseminated on behalf of Petrotech.

23. Miller used his son-in-law, who as Petrotech's Secretary had the ability to upload press releases to www.otcmarkets.com and the company's website, to publicly disseminate the press releases via those websites.

C. **Miller's False Statement about Petrotech's Marijuana License**

24. On February 26, 2014, in a press release that Miller authored and directed to be disseminated, Petrotech announced that in conjunction with its newly-founded marijuana

business, specifically its production and distribution channels in Washington and Colorado, it had "secured a Medical and Recreational License from the state of Colorado."

25. This statement is false. First, Colorado has never issued any marijuana-related license by that name. Second, Petrotech, LP US, and all their associated individuals have never held any Colorado licenses to cultivate or sell marijuana in the medical or retail markets, and, as non-Colorado residents, could not obtain such licenses. Without such licenses, Petrotech and LP US would not be legally able to commercially produce or market marijuana in Colorado.

26. Despite not having the requisite license to conduct such commercial marijuana business in Colorado, Petrotech further announced in this press release an increased projected marijuana production capacity of a minimum of 60-70 pounds per state, per month, with an average market price of $3,000 per pound. These projections were announced as a result, in part, from the securing of the marijuana license, which, in reality, was non-existent.

## VI. CLAIMS FOR RELIEF

### COUNT I

### Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act

27. The Commission realleges and incorporates Paragraphs 1 through 26 of this Complaint.

28. On or about February 26, 2014, Miller, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in connection with the purchase or sale of a security.

29. By reason of the foregoing, Miller violated, and unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

## COUNT II

### Violations of Sections 10(b), 20(b), and Rule 10b-5(b) of the Exchange Act

30. The Commission realleges and incorporates Paragraphs 1 through 26 of this Complaint.

31. At all relevant times, Miller directly or indirectly violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

32. At all relevant times, Miller, directly or indirectly, through his son-in-law, did acts or things which would have been unlawful for Miller to do under Exchange Act Section 10(b) and Rule 10b-5(b).

33. By reason of the foregoing, Miller violated, and unless enjoined, is likely to continue to violate, Section 20(b) of the Exchange Act, 15 U.S.C. § 78t(b).

## VII. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court find Miller committed the violations alleged in this Complaint, and:

### I.

### Permanent Injunctive Relief

Issue a Permanent Injunction restraining and enjoining Defendant, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with him, and each of them, from violating the federal securities laws alleged in this Complaint.

**II.**

**Disgorgement**

Issue an Order directing Defendant to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

**III.**

**Penalties**

Issue an Order directing Defendant to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

**IV.**

**Officer and Director Bar**

Issue an order pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), barring Defendant from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

**V.**

**Penny Stock Bar**

Issue an order barring Defendant from any future participation in the offering of any penny stock, as defined by Section 3(a)(51)(A) of the Exchange Act, 15 U.S.C. § 77c(a)(51)(A) and Rule 3a51-1 thereunder, 17 C.F.R. § 20.3a51-1, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, pursuant to Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6), and the Court's equitable powers.

**VI.**

**Further Relief**

Grant such other and further relief as may be necessary and appropriate.

**VII.**

**Retention of Jurisdiction**

Further, the Commission respectfully requests the Court retain jurisdiction over this action and over this Defendant, in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

March 13, 2017

By: s/Wilfredo Fernandez

Wilfredo Fernandez
Senior Trial Counsel
Fla. Bar No. 142859
Telephone: (305) 982-6376
Facsimile: (305) 536-4154
E-mail: FernandezW@sec.gov

**ATTORNEY FOR PLAINTIFF**
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300